CHARLES WILLIAMS *et al.*

*v.*

DAVID EVANS.

*Filed at Ottawa January 15, 1895.*

1. DEED—*effect of grantor's retaining possession.* The retention of possession by the grantor in a deed providing that she shall receive the rents for life, is not inconsistent with delivery of the deed.

2. EVIDENCE—*what will establish delivery of trust property.* Delivery of personal property mentioned in an instrument creating a trust is established by evidence that the donor caused the papers representing the property to be taken to a law office, where the instrument was executed, and handed the box containing them to one of the trustees, who rented a safe, into which the securities were put, and that the trustees accepted the trust in writing, and received the income on the securities.

3. TRUST—*cannot be defeated by subsequent action of trustees.* A trust established by a written instrument and delivery of the property cannot be defeated by subsequent action of the trustees in redelivering to the donor.

4. SAME—*when not a testamentary disposition.* An instrument giving property in trust, to receive the rents and pay them to the donor for life, and upon her death to erect a church, is not invalid, as a testamentary disposition not in accordance with the Statute of Wills, where the property is absolutely disposed of.

5. SAME—*in part designed to defeat husband's marital rights.* A trust of personal property created by a married woman on condition to pay her the income of the property for life, and at her death to erect a church, the leading motive for which is the benefit of the church, is not defeated by the donor's desire to prevent her husband, who has not lived with her for twenty years, from obtaining her property.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

HENRY D. BEAM, EDWARD D. COOKE, and H. C. NOYES, for appellants:

Equity will not enforce a trust in favor of volunteers, unless it is perfectly created, and nothing remains to be done to carry it into effect. *Padfield* v. *Padfield,* 78 Ill. 16; *Badgley* v. *Votrain,* 68 id. 32, and cases cited.

The pretended trust assignment was void, as merely colorable, and intended only to defeat the marital rights of the donor's husband, and was designed to take effect as a testamentary disposition of property, contrary to the Statute of Wills.   *Barnum* v. *Reed,* 136 Ill. 398, and cases cited ; *Roth* v. *Michalis,* 125 id. 333.

The pretended trust is void for want of actual delivery, and because the donor, Mary Williams, retained dominion and control over the property, and both the alleged conveyance in trust, and the property, real and personal, therein described, remained in her actual and absolute possession at the time of her death.   *Roberts* v. *Draper,* 18 Ill. App. 167; *Williams* v. *Forbes,* 114 Ill. 171, and cases cited ; *Hayes* v. *Boylan,* 141 id. 400 ; *Telford* v. *Patton,* 144 id. 611; *Cline* v. *Jones,* 111 id. 563.

The court below erred in not receiving and considering evidence of acts of ownership and dominion exercised by Mary Williams, and her declarations accompanying and explanatory of the same, after the alleged execution of said trust instrument, on the question of delivery. *Abend* v. *Mueller,* 11 Ill. App. 257; *Amick* v. *Young,* 69 Ill. 542 ; *Cline* v. *Jones,* 111 id. 563 ; *Black* v. *Railway Co.* id. 361; *Insurance Co.* v. *Jaynes,* 87 id. 202 ; *Jordan* v. *Davis,* 108 id. 336 ; *Curtis* v. *Harrison,* 36 Ill. App. 291; *Insurance Co.* v. *Campbell,* 95 Ill. 267; *Benneson* v. *Aiken,* 102 id. 284.

JOHN O'CONNOR, for appellee :

The declarations of a grantor, made before or after the execution of a deed, cannot be introduced in evidence to impeach the deed.   *Dickie* v. *Carter,* 42 Ill. 384; *Massey* v. *Huntington,* 118 id. 88 ; *Guild* v. *Hull,* 127 id. 523 ; *Francis* v. *Wilkinson,* 147 id. 370 ; *Brower* v. *Callender,* 105 id. 88.

It cannot be shown that the grantor intended a deed to have an effect different from that apparent on its face. If this were so, there would be no stability to titles. *Williams* v. *Higgins,* 69 Ala. 517; *Lawton* v. *Sager,* 11 Barb. 349 ; *Ward* v. *Lewis,* 4 Pick. 518.

CRAIG, J.: This was a bill in equity, brought by David Evans, to obtain a construction and enforcement of an alleged trust agreement executed by Mary Williams, for the appointment of a new trustee, and for other relief particularly specified in the prayer of the bill.

Mary Williams died in Chicago February 3, 1891, intestate and without issue, leaving surviving her as heirs, a husband, Charles Williams, with whom she had not lived for over twenty years before her death, and certain nephews and nieces, descendants of her deceased brothers and sisters. The husband obtained letters of administration upon the estate of the deceased from the probate court of Cook county, February 12, 1891. After obtaining letters of administration the administrator attempted to gain possession of certain papers and securities which originally belonged to Mary Williams, but what occurred in the probate court has no bearing on this case, and it will not be necessary to refer to the proceedings there.

The bill of David Evans, among other things, alleged that Mary Williams, in her lifetime, owned the north twenty-four feet of lot 6, in block 21, Carpenter's addition to Chicago, and also certain personal property hereinafter mentioned, and on June 26, 1888, executed and delivered to orator and one William R. Griffith, a deed of all of said real and personal property, in trust, to manage the same, collect rents and income, paying the same over to Mary Williams during her life, for her support, and upon her death to convert said property into money and apply the same to the purchase of a piece of ground in Chicago, on the corner of two streets in some convenient location, and at a price in their discretion, and with the balance of the money to erect thereon a church, and, as soon as a Methodist Episcopal church should be organized to occupy said building, to convey said ground and building to said church. Said personal property consisted of four $1000 funding county bonds of Jones county, Iowa; a note of the trustees of the Welsh

Calvinistic Church of Chicago, for $1000, payable August 17, 1891, at five per cent interest; a note of the trustees of said church for $6000, August 17, 1896, at five per cent interest, secured by trust deed to O. H. Horton, trustee, on real estate in Chicago; an agreement of Stein & Barnhart to pay Mary Williams $5500 in ten years, on certain conditions, secured by mortgage on real estate in Chicago; that orator and Griffith, in writing, June 26, 1888, accepted said trust and acknowledged the delivery to them of said property, and on same day said personal property was delivered to them, and Mary Williams executed to them a quit-claim deed of said real estate, and an assignment of said mortgage of Stein & Barnhart, and indorsed and delivered to said Evans and Griffith said notes, bonds, papers, abstracts of title, etc.; that said quit-claim deed and assignment were duly recorded the same day, in said county; that said papers and property were delivered absolutely, and without reservation or condition, and said trustees had absolute possession and control thereof; that Griffith, in October, 1889, being absent from the United States, executed and acknowledged a reconveyance of said property to said Mary Williams, and his resignation as trustee, which instrument was delivered to Mary Williams and recorded in Cook county April 2, 1890; that Griffith had no power to resign nor Mary Williams to revoke said trust, and said reconveyance vested in her the legal title to one undivided half of said property, but subject to the same trust as before, and a new trustee should be appointed.

Charles Williams answered the bill as an individual and also as administrator, admitting that Mary Williams was the owner of the real and personal property mentioned in the bill; avers she was seized and possessed, and in the actual ownership and possession, of the same at the time of her death; denies the execution and delivery of said conveyance in trust, or that Mary Williams intended to create, or did create, any such trust, or that

said trustees ever accepted the same, or that said real or personal property was ever delivered to them, or that they ever had the absolute or actual possession thereof, but avers that Mary Williams retained the absolute possession and control thereof, up to and at the time of her death ; that said pretended trust is vague, uncertain, indefinite, and wholly void.

It appears from the evidence that on the 26th day of June, 1888, Mary Williams executed and acknowledged before a notary public a contract, which was in substance as follows :

"*Know all men by these presents,* that I, Mary Williams, of the city of Chicago, in the county of Cook and State of Illinois, in consideration of the sum of one dollar to me in hand paid, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell, convey and assign, transfer and set over and deliver unto William R. Griffith and David Evans all the real and personal property now belonging to me, of every name, nature and description whatsoever, to have and to hold the same absolutely and forever, in trust for the following uses and purposes : First, to manage and keep possession, collect and receive income, rents, etc., and to pay same over to grantor during her lifetime, for her support and maintenance ; second, that upon her death said trustees shall convert said property, real and personal, into money, and apply same to the purchase of a piece of ground in Chicago, on the corner of two streets, in some convenient location to be selected by them, in their discretion, they to pay such price for said ground as they shall deem proper, and to erect on said premises, with the balance of money in their hands, a church, to be used for the Methodist Episcopal Church, and as soon as a church shall have been organized of the denomination known as the Methodist Episcopal Church to occupy said church building, to convey to the church so organized said ground and church building. The following described property has been this

day delivered by me under this agreement, viz.: First, said four Jones county bonds, for $1000 each; second, said note of the trustees of the Welsh Calvinistic Church of Chicago, for $1000; third, said note of same trustees for $6000, in ten years; fourth, said agreement of Stein & Barnhart to pay Mary Williams $5500 on certain conditions."

On the same day Mary Williams executed and delivered to the same parties a quit-claim deed, in which she conveyed and quit-claimed to William R. Griffith and David Evans all interest in the north twenty-four feet of lot 6, block 21, Carpenter's addition to Chicago, "reserving, however, to the said grantor, the rents, issues and profits arising from said premises during the life of said grantor," which was acknowledged and recorded June 26, 1888. On the same day all the notes and the agreement of Stein & Barnhart were indorsed by Mary Williams to the trustees.

Under and by virtue of this transaction complainant in the bill claims title to the property. On the other hand, it is claimed that the pretended trust is void for want of actual delivery, and because the donor, Mary Williams, retained dominion and control over the property, remaining in the actual possession at the time of her death. It is also claimed that the transaction was void as merely colorable, being intended only to defeat the marital rights of the husband, and was designed to take effect as a testamentary disposition of property, contrary to the Statute of Wills.

Whether there was a delivery, so as to vest title in the trustees, was a question to be determined from the evidence. As to the quit-claim deed conveying the north twenty-four feet of lot 6, there can be no serious question. After it was executed and acknowledged it was handed to the grantees, and they took the custody of the instrument and filed it for record. The grantor retained the possession of the property conveyed, but no import-

ance can be attached to that fact, as the deed provides that the grantor shall receive the rents during life. The retaining possession by the grantor was consistent with the deed.

It appears from the evidence of Edward Jones that Mary Williams had a box in the Merchants' Safe Deposit Company, 78 LaSalle street, from June, 1887, to June, 1888. On the 26th day of June, 1888, Jones, at the request of Mrs. Williams, took the box containing the papers in controversy to the law office of Thomas M. Hoyne. Hoyne was called as a witness, and testified: "Am a lawyer. Was acquainted with Mary Williams in her lifetime. I drew papers for her in June, 1888, as her attorney. She had consulted me several times before that in regard to a trust she wished to create, and on the 26th of June she executed the paper. I drew that paper for her, at her request. I saw her execute it. There were other papers executed at the same time—a quit-claim deed from Mrs. Williams to the trustees, and an assignment of mortgage, and, I think, a note or notes were indorsed by her to the trustees." The witness further testified: "The Jones county bonds were delivered to the trustees, with all the papers mentioned in that instrument, by Mrs. Williams, in my office. Mrs. Williams, Evans, Griffith and myself were present. D. Edward Jones was present a part of the time. Don't remember whether he was present when the papers were actually delivered. He brought the papers in a tin box from the Merchants' Safe Deposit Company and handed them to Mrs. Williams. Mrs. Williams then handed the box to one of the trustees—I think Mr. Griffith." Jones testified that the box he took to Hoyne's office was returned to the Merchants' Safe Deposit Company on the same day by Evans and Griffith, who rented a new safe for one year and put the securities in it. The new safe was No. 4552.

The trustees, at the foot of the instrument in writing, over their own signatures, accepted the trust and acknowledged the delivery of the property named in the instrument to them. After receiving possession of the property the trustees executed the following power of attorney:

"CHICAGO, *June 26, 1888.*

"We, William R. Griffith and David E. Evans, trustees appointed by Mrs. Mary Williams by instrument in writing this day executed, do hereby make, constitute and appoint D. Edward Jones our true and lawful attorney, for us and in our name to receive and collect the rents and interests arising and accruing upon all the property put into our hands as such trustees, during the lifetime of Mrs. Williams, and to pay the same direct to her.

W. R. GRIFFITH,
D. E. EVANS."

Under this instrument, Jones, as attorney for the trustees, collected interest and paid it over to Mrs. Williams. Upon this point A. M. Barnhart testified: "I am a member of the firm of Stein & Barnhart. I made two payments of interest on the mortgage to Jones, for Griffith and Evans. Jones was their agent. One payment was October 9, 1888, the other March 9, 1889, and another payment October 9, 1889. I made a payment to Mr. Evans personally, as trustee, March 9, 1890. The amount of each payment was $165. The payments were made to Mr. Jones under the power of attorney in evidence. The original is in my possession. I received it from Mr. Jones."

The record contains other evidence tending to prove a delivery, but it will not be necessary to refer to it here, as the evidence already alluded to is ample to establish the fact that there was a complete delivery of the property named in the instrument creating the trust, to the trustees.

It appears from the evidence that some time between September, 1889, and January 29, 1890, the papers in con-

troversy came into the possession of Mary Williams, but how or under what circumstances the evidence does not disclose, and on the 29th day of January, 1890, Mary Williams rented a safety deposit box from the Prairie State Savings and Trust Company, on the west side, for one year, and the papers which had been deposited with the Merchants' Safe Deposit Company at 78 LaSalle street by the trustees were transferred to this box. After this transfer the cashier testified that "Mary Williams sometimes came to the bank and had access to the box. She also gave written authority to David Evans to have access to the box." The fact that the property, after the execution of the trust instrument, was found in the possession of Mary Williams, is relied upon by the appellants to establish the fact that she never intended to deliver the papers or property absolutely. Upon the execution and delivery of the trust instrument and the property therein described, by Mary Williams to the trustees, the rights of the parties became fixed, and the trustees, after accepting the trust, had no authority to deliver the possession of any of the property named in the trust instrument to Mrs. Williams, and the fact that they disregarded their duty in this regard did not affect the validity of the transaction as originally made. If there was a complete delivery of the trust instrument, and the property therein described, to the trustees, as we think there was, the subsequent acts and declarations of Mrs. Williams and the trustees can not defeat the trust. (*Dickie* v. *Carter*, 42 Ill. 376; *Massey* v. *Huntington*, 118 id. 80; *Guild* v. *Hull*, 127 id. 523; *Francis* v. *Wilkinson*, 147 id. 370; *Brower* v. *Callender*, 105 id. 88.) It is true that Mrs. Williams, at the time of the execution of the trust instrument, was somewhat advanced in years, being at the time about eighty years old, but the evidence discloses that she fully comprehended and understood the nature of the transaction, and what she did was done after mature deliberation, and after she had been fully informed of the nature and effect

of an instrument like the one she executed. There is nothing in the transaction which tends to show that it was designed to take effect as a testamentary disposition of property, but, on the other hand, the property was absolutely disposed of. Perhaps it may be that Mrs. Williams entertained a desire to prevent her husband, who had not resided with her or aided in her support for twenty years, from obtaining her property; but that was not the motive which led to the execution of the trust instrument. She was a devoted Methodist, and she had long, as appears from the evidence, entertained the idea of devoting her property to the erection of a Methodist church. Of course, she could make no disposition of her lands which would defeat the dower of her husband, but so far as her personal property, notes, bonds and mortgages were concerned, she was at liberty to make such absolute transfer of that property as she might think for the best. This she has done, and we think the judgment of the circuit court sustaining the transaction was correct, and it will be affirmed.

*Judgment affirmed.*