Charles Fry, Appellee, v. H. C. Pence et al., Appellants.

Gen. No. 8,490.

Opinion filed January 26, 1931.

Rehearing denied April 10, 1931.

JOHN A. BARBER, CLAYTON J. BARBER and LESLIE J. TAYLOR, for appellants; ALTON G. HALL and C. E. FLESHER, of counsel.

J. E. HOGAN and E. E. DOWELL, for appellee.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This litigation arises over a bill for accounting filed by appellee, Charles Fry, surviving husband of Sadie Fry, deceased, in the circuit court of Christian county against H. C. Pence, Mary Springstun and Emma Kuhn. The bill sought an accounting from H. C. Pence of a certain trust estate for which he was trustee, and as to which the appellee, Charles Fry, claimed to be the sole beneficiary and entitled to all of the assets and property constituting said trust estate. The defendants in the bill, H. C. Pence, Will Pence, Mary Springstun and Emma Kuhn, are the surviving brothers and sisters of Sadie Fry, deceased.

The bill of complaint in this case charges and avers that Sadie Fry, the wife of appellee, departed this life intestate in the City of Pana, in said county, on or about the 6th day of February, 1925; that she left surviving her the appellee, Charles Fry, her widower, but left surviving her no child or children, nor the descendants of any child or children; that her father and mother were both dead; that each of them departed this life prior to her death, and that she left surviving her the following brothers and sisters, viz.: H. C. Pence, Will Pence, Mary Springstun and Emma Kuhn, and avers that there are no children of any deceased brothers or sisters, and that appellee and the brothers and sisters above named are the only persons having any interest in the subject matter in this bill.

The bill avers that Sadie Fry in her lifetime, by the name, style and description of Sadie Warren, on July

25, 1922, at the City of Taylorville in said county, entered into a certain written agreement with one H. C. Pence of Taylorville, Illinois, one of the parties defendant, which agreement was entered into prior to the marriage of the appellee and the said Sadie Warren; that said agreement was executed by the said Sadie Fry by the name of Sadie Warren and the execution thereof duly acknowledged before Leslie J. Taylor, a notary public in said county; avers that by the terms and provisions of said written agreement and in consideration of one dollar and other good and valuable consideration and benefits to accrue to her, the said Sadie Warren, she did thereby sell, transfer, assign and pay over and deliver into the hands of the said H. C. Pence in cash the sum of $15,000, and avers that the sum of money aforesaid was paid and delivered to the said H. C. Pence in trust only for the uses and purposes and upon the terms and conditions following, that is to say: That said H. C. Pence, as such trustee, agreed that said funds should be invested and kept invested as continually as might be, in securities of the class in which trustees are permitted by law to invest trust funds, towit, in State, national or municipal bonds, warrants or certificates of indebtedness, first mortgages on improved lands, situated in the State of Illinois, together with other provisions set forth in said trust agreement; that said H. C. Pence agreed by said instrument of writing, as such trustee, to collect the income promptly from the trust fund and after payment of necessary expenses and charges properly payable therefrom, and all taxes and assessments levied against said property, and other expenses incident to the handling of such funds, to pay over the net income therefrom to the said Sadie Warren at quarterly intervals or oftener if such funds were available and in the opinion of the said H. C. Pence were necessary or desirable. The bill avers that neither the

trust fund nor the income in the hands of the said H. C. Pence shall be subject to assignment, sale, transfer, debt or obligation of the said Sadie Warren, and that said trust agreement further provided that the payments to be made by the said trustee should continue for and during the term of the natural life of the said Sadie Warren; avers that by the said trust agreement all unused income and all of the principal of said trust fund remaining in the hands of the trustee should be disposed of as follows: that in the event the said Sadie Warren may have married and died leaving issue of such marriage or children or descendants of children issue of such marriage, then and in such event it was the duty of the trustee under the trust agreement to pay to such issue of such marriage or their descendants if living all of said trust fund in accordance with the laws of descent of the State of Illinois; that in the event said Sadie Warren should die, leaving no child or descendants of children, issue of a lawful marriage, then and in that event within one year after her death the trust fund should be converted into cash and the proceeds distributed to the heirs at law of the said Sadie Warren in accordance with the laws of descent of the State of Illinois. The bill avers that it was further provided in said agreement that said trustee or his successor in trust should render to the said Sadie Warren on the first day of July of each year during her lifetime a report, showing the investments of said trust fund, the gross receipts therefrom, the expenditures on account thereof and the net income.

The bill further avers that upon the execution of the trust agreement the said Sadie Warren paid and delivered to the said H. C. Pence the said sum of $15,000 in trust, to be handled and invested by him under the terms of the trust agreement, and avers that the said H. C. Pence has had and still has the possession, control and management of said trust fund as

such trustee, and that no other trustee was appointed in his stead, and that he did not during the lifetime of the said Sadie Warren surrender or return said trust fund to her, and avers upon information and belief that said H. C. Pence is still acting as such trustee under the agreement aforesaid, and that he has in his possession the principal of said trust estate together with divers amounts of interest and income therefrom.

The bill further avers that after July 25, 1922, appellee was lawfully married to the said Sadie Warren, and that the marriage relation between them existed and continued from the date thereof until the date of the death of the said Sadie Fry, and avers that the said Sadie Warren, whose name is signed to the trust agreement, and the said Sadie Fry above mentioned, are one and the same person.

The bill avers that by virtue of the premises and by virtue of appellee's marriage to the said Sadie Warren, and by virtue of the death of the said Sadie Fry, leaving appellee as her surviving husband, and by virtue of the terms and conditions of said trust agreement, and of the statute in such cases made and provided, appellee is entitled to the whole of the said trust estate and property, and all the interest and earnings and accumulations now in the hands of the said trustee and not heretofore accounted for and paid over to the said Sadie Warren or the said Sadie Fry in her lifetime.

The bill further avers that after the death of Sadie Fry, appellee frequently applied to the said H. C. Pence, the trustee aforesaid, and requested that he render to appellee an account of his acts and doings as such trustee, and disclose to him the condition of said trust estate and of the amount of principal and interest then in his hands, possession and control, and requested said H. C. Pence as such trustee to pay over to appellee the principal of said trust estate and the

net interest and profits and accumulations thereof; avers that the said H. C. Pence has at all times since the death of said Sadie Fry refused to render to said appellee any account of said trust estate or of the funds in his hands, or of the interest, earnings and accumulations thereof, and has refused to pay over to appellee the principal of said trust estate or the interest, earnings and accumulations from the trust property; avers that appellee has during all the time aforesaid been wholly unable to obtain any settlement or account of said trust estate from the said H. C. Pence as such trustee, and avers that appellee verily believes that he will be unable to obtain any such settlement or accounting touching said trust estate under the agreement aforesaid without the aid and assistance of the court.

The bill avers that the other defendants, Will Pence, Mary Springstun and Emma Kuhn, brother and sisters of said Sadie Fry, deceased, have or claim to have some right or interest in said trust estate and the property, assets and funds thereof. The bill prays for an accounting and that the court may declare the trust created as aforesaid at an end, and that the proceeds thereof be distributed according to the terms of said trust agreement and for general relief.

To this bill the defendants filed a joint and separate plea in which it is averred that Sadie Fry on February 13, 1925, by her writing, duly witnessed and acknowledged, conveyed all her personal property, including trust fund in the hands of H. C. Pence, to the defendant, H. C. Pence; and also pleaded a settlement entered into between Charles Fry and the said H. C. Pence, on or about April 2, 1925.

After the filing of this plea, appellee obtained leave to amend his bill, and thereafter filed an amendment to the same in which it is averred that the alleged bill of sale set out in the plea was null and void because

there was no valid consideration for the same, and because it attempted to make a testamentary disposition of the property and estate of the said Sadie Fry to take effect after her death, and was not witnessed and executed according to the statute in relation to wills, and because the property and assets of the trust estate were not subject to sale and assignment. The amendment also averred that the alleged release of April 2, 1925, was procured by fraud, deceit and misrepresentation on the part of the defendant H. C. Pence; that as such trustee he wilfully, intentionally and wrongfully refused to make any accounting of the trust estate or of the amount and property and assets thereof; that he refused to permit appellee and his counsel to read and examine the trust agreement; that he fraudulently represented to appellee at the time said alleged settlement was entered into that the trust estate consisted of only about $2,700, and that he fraudulently, wrongfully and deceitfully represented to appellee that he, appellee, was liable to the said H. C. Pence on account of moneys and funds which the trustee alleged the appellee had obtained from his wife during her lifetime and prayed that the bill of sale and alleged release be vacated, canceled, set aside and for naught esteemed for the reasons aforesaid.

To the bill as amended the defendants demurred, which demurrer was overruled by the court. Following the overruling of said demurrer appellants filed a joint and several answer to the bill. They admit the death of the said Sadie Fry as alleged in the bill; neither admit nor deny execution of the trust agreement. H. C. Pence for himself admits the trust agreement was executed; admit they were informed that H. C. Pence received $15,000 as trustee, but deny that he has had in his control the said trust fund but aver a disposition of it by the alleged settlement made on April 2, 1925, and the distribution of the trust fund to

the heirs of Sadie Fry other than Charles Fry, and allege that appellee is estopped to claim any right, title or interest in said fund; allege the execution of said bill of sale to H. C. Pence whereby Sadie Fry conveyed all interest in her personal property to the said H. C. Pence, and aver that at the time of her death the only personal property she had was a claim against appellee for $9,500, which he had agreed to pay; deny that appellee became entitled to any trust funds in the hands of H. C. Pence; deny any request for an accounting; deny any request for payment of the trust estate; deny that he has been unable to obtain any settlement and aver a full settlement made on April 2, 1925, indorsed on the said bill of sale heretofore referred to; deny that H. C. Pence as trustee or the other defendants were called upon to make any accounting to appellee; deny that the bill of sale was obtained for the purpose of avoiding or evading the statute of wills and was executed by the said Sadie Pence Fry at the. hospital at Pana at her own instance and request, and deny that she executed the bill of sale without knowledge of the purpose or the intention of the said H. C. Pence; aver frequent settlements and accounts of the said H. C. Pence with the said Sadie Fry; aver that appellee induced the said Sadie Fry to enter into the marriage relation for the sole and only purpose of securing the property of the said Sadie Fry and converting it to his own use; that she received about $8,000 as heir of her father, and that appellee obtained the money under promise of giving security of the loan and refused to do so; aver that when appellee learned of the $15,000 transferred to the said H. C. Pence, he demanded that the trust be broken and that he insisted that the income be paid over as fast as accumulated, and that appellee obtained said funds and used the same for the payment of taxes on his own property and other personal expenditures; aver that he neglected his said wife, refused to treat her as his wife;

that he failed to contribute to her support or to furnish her with the necessities of life from the time of her marriage, and aver that he did not call upon her during the time that she was in the hospital or assist her in entering the hospital; aver that appellee employed several attorneys and was advised by them as to his rights and interests; that he knew that his wife had contracted obligations as surety or accommodation maker of notes, and that if the holders learned that Charles Fry was indebted to the said Sadie Fry in the sum of $9,500 that he would be required to account to and with said creditors for said sum, and that he sought a settlement and compromise with H. C. Pence in reference to said matters; deny the making of any misrepresentations as in said amendment charged and aver that appellee had been familiar with said trust agreement many months prior to said settlement and aver that he had a copy thereof in his possession at the time of the death of said Sadie Fry; deny the making of any statements in regard to the payment of large sums of money to said Sadie Fry in her lifetime; deny that at the death of the said Sadie Fry appellee became entitled to the trust fund, or any part thereof, or that H. C. Pence occupied any fiduciary relation toward appellee; deny the concealment of any facts from the said appellee; allege that Charles Fry applied for and obtained letters of administration from the county court of Christian county, Illinois, on the estate of the said Sadie Fry, deceased, and that thereafter Charles Fry, administrator as aforesaid, impleaded H. C. Pence in a certain bill in equity, being a bill for accounting in which he sought to recover the alleged trust fund of $15,000 as an asset of the estate of Sadie Fry, deceased, and that he was entitled to have said fund paid over to him for administration and aver said judgment to be a bar to this proceeding.

Exceptions were sustained to a part of the answer and overruled as to certain other parts. There was a

trial before the court without a jury and the court found the issues in favor of the appellee, and later on and before entry of a decree, by agreement of the parties, heard the evidence as to an accounting and made disposition of the whole case by one decree.

The court by its decree found that H. C. Pence, appellant, is indebted to the complainant in the principal sum of $10,764.74, together with interest thereon at the rate of five per cent per annum from January 26, 1927, to March 14, 1930, amounting to $1,684.33, the total indebtedness on said March 14, 1930, by the appellant H. C. Pence as trustee, to the complainant, Charles Fry, being the sum of $12,449.07.

The court further found that H. C. Pence, trustee, on January 26, 1927, wrongfully made distribution of the funds constituting said trust estate; that he paid Emma Kuhn, Mary Springstun and Will Pence, appellants, and to himself each the sum of $2,693.68, and that in the event said H. C. Pence shall fail to pay the entire sum so found by the court due to the complainant, then said complainant, Charles Fry, shall have the right to recover the sum of $2,693.68 with interest from January 26, 1927, from each of the said defendants, appellants.

The court ordered that the said bill of sale executed by the said Sadie Fry to H. C. Pence, bearing date February 13, 1925, by which Sadie Fry attempted to sell and convey to the said H. C. Pence, appellant, the bonds and other securities constituting the trust property and estate, be vacated, canceled and set aside and the release executed by Charles Fry to the defendant H. C. Pence, bearing date April 2, 1925, be vacated, canceled and set aside.

The court ordered the defendant H. C. Pence to pay over to the complainant the said sum of $12,449.07 with interest at five per cent per annum from the date of the decree, and that judgment be entered in favor

of the complainant, Charles Fry, and against the defendant H. C. Pence for that amount, together with costs of this proceeding, and in the event of failure to pay said judgment and costs execution may issue therefor.

The court ordered that in the event of any failure upon the part of H. C. Pence to pay the said sum of money to the complainant, Charles Fry, or in the event of inability of the complainant to collect said money, it is ordered that the said sum, with interest and costs, be recovered from the defendants and appellants Will Pence, Emma Kuhn and Mary Springstun, who are hereby decreed severally liable therefor, according to the respective amounts so paid to them by the said H. C. Pence in said distribution, and that judgment is hereby entered against them for the said sum of $2,693.60, with interest from March 14, 1930.

Appellants have brought the record of the cause by appeal to this court for review.

We do not regard the allegations of the answer, in relation to the purposes of the marriage between appellee and his wife, or their financial transactions with each other, or the details of their domestic life, as being in any wise material to the issues presented by the bill or subject to trial and determination in this suit. The language of this trust is of a perfect and completed trust, for a definite purpose, to extend during the lifetime of the creator of the trust and the property, and its title for the purpose of the trust passed to the trustee. Such a trust is not subject to revocation by the grantor, but must be carried out and completed by the trustee.

In *Hubbard v. Buddemeier,* 328 Ill. 76, 85, the court held:

"A trust created by a deed conveying property to the grantee to manage, receive the rents and pay the same to a particular person or for a particular pur-

pose for a certain time and then apply the property to another designated purpose cannot be defeated by the subsequent acts of the grantor and the trustee. (*Williams v. Evans,* 154 Ill. 98; *Massey v. Huntington,* 118 id. 80.) A trust is created when no act is necessary to be done to give it effect and when the trust is fully and finally declared in the instrument creating it. A trust thus perfectly created and complete requires no consideration to support it. (2 Pomeroy's Eq. Jur. sec. 1001; 1 Perry on Trusts, sec. 98; *Massey v. Huntington, supra; Padfield v. Padfield,* 68 Ill. 210.) The allegation that out of the money borrowed and rents received the appellant has paid all money due the beneficiaries under the trust created by the will of Fannie A. Buddemeier, and also all debts and obligations existing against the appellee as mentioned in paragraph 2, clauses (b) and (d) in the deed, does not justify the conclusion of law that all the objects and purposes for which the trust was created have been accomplished. Where the beneficiaries of a trust are all competent to act and the trust estate is subject to no future contingencies and the beneficiaries have an absolute right to the trust estate the trust may be terminated by a contract of all the beneficiaries (2 Perry on Trusts, sec. 920). This, however, cannot be done against the objection of one beneficiary. (*Stephens v. Collison,* 274 Ill. 389.) Trusts cannot be terminated by agreement of the beneficiaries except in cases where the object of the trust has been practically accomplished and all the interests created by it have become vested. (*Anderson v. Williams,* 262 Ill. 308; *Johnston v. Gastman,* 291 id. 516.) While the bill shows the object of the trust to relieve appellee and her property from the burden and lien of her then existing indebtedness has been accomplished, it also shows that the full purpose of a trust has not been accomplished, that it is uncertain to whom, under the

terms of the trust, the title to the land is ultimately to· pass, and that the deed by which the trust was created reserved no power of revocation to the grantor.''.

The same rule is laid down in *Williams v. Evans,* 154 Ill. 98; *Massey v. Huntington,* 118 Ill. 80, and *Mc-Cartney v. Ridgway,* 160 Ill. 129.

It appears from the evidence that Sadie Fry became a patient at the Huber Memorial Hospital in Pana on February 10, 1925; that she entered said institution for observation and treatment and was taken there on the evening of that day by her husband. Dr. Eberspacher was the attending physician. On Wednesday of that week X-Ray plates were made of the patient, and on Thursday it was decided that she was suffering from obstruction of the bowels and that an operation was deemed necessary. That fact was communicated to the decedent, but appellee was not advised of it. During all the time decedent was in the hospital her sister, Emma Kuhn, one of the appellants, was with her. The evidence disclosed that Dr. H. C. Pence, her brother, visited her at the hospital on Thursday evening prior to the operation on Friday morning, and immediately upon his return to Taylorville he caused to be prepared the alleged bill of sale, part of which was typewritten and part of which was filled in with pen and ink. He returned to Pana with this document on Friday morning, the day of the operation, went to the H. N. Schuyler State Bank and got one A. W. Seiler, a notary public, whom he took to the hospital with him for the purpose of taking an acknowledgment of this bill of sale. The evidence discloses that this bill of sale was executed by Mrs. Fry just a short time before she was taken to the operating room; that she knew her condition was serious, knew that she was undergoing a major surgical operation, the outcome of which was decidedly uncertain, and following which she passed away on February 15, 1925,

This bill of sale for a purported consideration of one dollar pretended to convey to appellant, Dr. H. C. Pence, her trustee, all of his sister's property, her household goods and the property held in trust "to his own proper use and behoof forever and for such disposition otherwise as he thinks best." For the reasons stated and from the relationship of the parties, we do not understand appellants to claim that the title of any of the property passed by this bill of sale, but it was used later as an instrument to effect a purported settlement. Thereafter on April 2, 1925, appellant Dr. Pence obtained from appellee a release in the following terms:

"Pana, Illinois, Apr. 2, 1925.

"In consideration of the advances heretofore made by my wife, Sadie Fry to me, I, the undersigned, Charles Fry, husband of Sadie Fry, hereby confirm the within bill of sale by her; I waive all right, title, claim or interest in the goods and chattels therein described.

Charles W. Fry.

"Subscribed and sworn to before me this 2nd day of April, A. D. 1925.

Claude Butts,
(Seal)                              Notary Public."

A further agreement was executed at the same time in the following form:

"Charles Fry, husband of Sadie Fry, now deceased, and H. C. Pence, her brother, have this day made the following contract and settlement:

"Sadie Fry in her lifetime turned over to Charles Fry approximately $9,500.00.

"Sadie Fry, prior to her marriage to Charles Fry, turned over to H. C. Pence $15,000.00.

"Sadie Fry prior to her death, made H. C. Pence a bill of sale of all of her personal property, including the chattel property, household goods, etc.

"It is agreed by the parties hereto, that a full and complete settlement has been made between them as to all claims either has; to any and all personal property owned or claimed to be owned by Sadie Fry and by the terms of such settlement, H. C. Pence waives all claims to the Chattel property and personal effects of Sadie Fry, and releases all claim to same to Charles Fry, as well as all claim to said $9,500.00.

"Charles Fry assumes and agrees to pay the Hospital, Doctor's, Surgeon's and other expenses of last illness of Sadie Fry, and also the entire funeral expenses. H. C. Pence to give Chas. Fry Two Thousand Dollars.

"Charles Fry, having read the Bill of Sale and contract between Sadie Fry and H. C. Pence, waives any and all claim to the fund in the sum of $15,000.00 and any increase thereon, and acknowledges the ownership of H. C. Pence to the same.

"Neither party will institute, or cause to be instituted, any administration of the Estate of Sadie Fry; there being no estate to administer, nor any other proceedings in court to question in any way the right to property herein agreed upon, nor aid or assist in any such proceeding.

Charles W. Fry,<br>
H. C. Pence.

"Subscribed and sworn to before me this 2nd day of April, A. D. 1925.

Claude Butts,

(Seal)                               Notary Public."

The whole contention in this case is whether the above and foregoing instrument was entered into by appellee freely and voluntarily and without any undue influence on the part of appellants.

The evidence tends to disclose as claimed by appellee that after the death of Sadie Fry appellee consulted Hon. A. J. Steidley, an attorney at law, of Shelbyville, in regard to the nature of his wife's estate. It

also appears that he knew in a general way that appellant H. C. Pence was handling certain moneys and funds belonging to Mrs. Fry but was not informed in regard to the terms and conditions under which the money was being held, the nature of the contract between his wife and her brother, or the amount of the funds involved. It appears that on the 21st day of February, appellee and his attorney started to Taylorville to see appellant H. C. Pence in regard to this money. They telephoned his office at Taylorville and were informed that he would be in Pana that day and might be seen at the residence of John Kuhn, husband of Emma Kuhn, one of the appellants, about a mile and a half east of Pana. Appellee and his attorney went to the Kuhn residence and saw Dr. Pence, but had no opportunity to talk with him, but did make an appointment to see him at the Flint Hotel at Pana during the noon hour. The evidence discloses that the parties met pursuant to the appointment and Mr. Steidley explained to Dr. Pence that the purpose of their visit was to ascertain in regard to the property, assets and funds of the estate of Sadie Fry. At that time Dr. Pence said in substance that she left no estate; that whatever property she had belonged to him; that appellee needed no attorney and that they could settle and adjust any matter that needed settlement or adjustment between them. Later on in the same day at a conversation held in front of the office of the Pana Coal Company at Pana, at which time Mr. Pence had his attorney present, both Mr. Pence and his attorney stated that the contract was an iron-clad agreement, and that appellee had no interest in the property involved in the trust estate. They did agree that if Mr. Steidley would come to Taylorville at some later date he might read the trust agreement, and towards the latter part of March he and appellee did go to Taylorville for that purpose. They called upon

Mr. Taylor, Dr. Pence's attorney, who told them that he had no time to talk to them. They called at Dr. Pence's office and told him they came for the purpose of reading the trust agreement; that Dr. Pence refused to permit them to read the agreement except in the presence of his attorney, and told them that he was advised that he was the owner of all of the assets of the trust estate and it was up to him whether he would give appellee anything or not. The evidence discloses that Mr. Steidley while he was acting as appellee's attorney, never did see or read the trust agreement.

The evidence also discloses that immediately following the visit of appellee and his attorney to Taylorville that Dr. Pence, on April 2, 1925, came to Pana and went to the residence of appellee; that he had no previous appointment with him and found appellee away from home at work. Dr. Pence drove to the place where appellee was at work and made an appointment to see him that evening at his residence. Dr. Pence returned there about 7:30 in the evening. He and appellee spent some time discussing matters while they were seated in Dr. Pence's car just south of appellee's residence. Appellee states that upon that occasion Dr. Pence told him he was all wrong in regard to the trust estate; that he didn't have any $15,000 in his hands; that there was only about $2,700 left and that if they got into litigation he could drag the thing along through court for four or five years and appellee would get nothing. Dr. Pence solicited appellee to settle all of their difficulties and told him that he would leave the furniture, which he never intended to take, and made various offers in the way of money in addition thereto and finally offered $2,000 in settlement. Appellee told him if his statement was correct that there was only about $2,700 in the trust estate and he would leave the furniture, that possibly a settlement on that basis would be as much as he could hope to get

at the end of a lawsuit and he told Dr. Pence that he would settle on that basis.

The evidence discloses that Dr. Pence had with him already prepared some sort of a typewritten paper, which is the contract heretofore referred to in the pleadings. He and Fry went into the house and the paper was handed to Fry, but having no glasses he was unable to read the paper. Dr. Pence purported to read it to him and both of them then executed it and later on came to Pana where Claude Butts, a notary public, put a jurat upon the paper under his notary seal. Appellee testifies that at the time the paper was signed there were no interlineations, additions or corrections made to the paper but when the same was offered in evidence portions thereof had been changed by pen and ink. The evidence also discloses that appellant Pence, the trustee, never did make an accounting to the appellee of the condition of the trust estate; that he never gave him any information as to the amount and value, or the nature and character of the assets in his hands, and that at the time of the execution of said release appellee had no knowledge or information in relation thereto and did not have the aid or advice of counsel, and that he relied upon and acted upon the statements and representations made by Dr. Pence, trustee.

The evidence also disclosed that appellee is a farmer by occupation, is also engaged in operating a threshing machine, and that he is a man of very limited learning and would be wholly unable to know or understand the scope and legal effect of a document such as the trust agreement in this case. The evidence also disclosed that Dr. Pence is a practicing dentist and has been for upwards of 30 years and that he had served as district president for the Central Illinois Dental Society.

The evidence also disclosed that two or three weeks after this alleged release was entered into that a sister of appellee who was keeping house for him after his

wife's death, in cleaning house found a paper in a closet where bed clothing was stored, which was Sadie Fry's copy of the trust agreement, and that this was the first opportunity which appellee ever had to obtain information as to the terms, conditions and provisions of said trust agreement.

The evidence tended to show that immediately upon learning of the critical illness of his sister there was a studied attempt on the part of Dr. Pence to obtain for himself as against appellee all of the property and assets of every kind and character which his sister possessed, and that after her death there was a persistent and successful attempt on his part to keep from appellee all knowledge and information in regard to the property and assets of the trust estate. It also appears from the evidence that throughout all of the negotiations between appellant Pence and appellee prior to the filing of this bill, that appellant persistently represented to appellee and assured him that he was liable to repay to his wife's estate any and all sums of money which she may have advanced to him during their married life and sought to make ~him believe and did make him believe that he was liable therefor.

Appellants seriously contend that the statement of facts as set forth by appellee does not represent the true state of affairs; that differences existed between appellee and his wife and that while appellee took his wife to the hospital that he refused to pay her bills there and did not go to see her again before her death. Appellants further contend that appellee knew all about the trust agreement and had borrowed moneys from his wife from the income of said trust, and it is further charged that appellee was the moving cause to effect said settlement for fear he would be called upon to pay the sum of $9,500, which he had borrowed from his wife during her lifetime. There are proofs sub-

mitted which would tend to support the facts stated upon each side of this litigation and in some matters appellee and appellant Pence in their testimony are in direct conflict.

It appears from the proofs that appellee did know that something of a business relation existed between Sadie Fry and her brother Dr. Pence, but there are no proofs that appellee had ever read the trust agreement or knew the amount of the funds until his sister found the papers in his home after the release was executed. It may be that appellee was led into executing the release from the fear that he would have to pay his wife's estate the sum of $9,500 but if this is so appellee's fears arose from ignorance of fact and ignorance of law, a condition that appellant Pence, trustee, was not in a position to use to his advantage and appellant Pence could only claim to be acting under the same ignorance of law and facts; otherwise it would constitute a constructive fraud. If the former it would be a mutual mistake. The proofs in this case are complete that appellant Pence withheld the trust agreement and did not make an accounting to appellee, but, before the filing of the bill in this cause, stood and in this litigation stands upon the legality of the release executed by appellee and contends that it was made by appellee with a full knowledge and understanding of all· the facts and as a purely voluntary instrument executed by appellee for the consideration set out, all of which led appellee· to sign and execute the instruments in question which he would not otherwise have done. In this case appellant Pence occupied a fiduciary relationship. He was trustee for his sister, Sadie Fry, and upon her death, under the law he became the trustee for her husband, appellee. It is a universal rule founded upon public policy, that where a confidential relation exists, if a gift is made to the person in whom the confidence is reposed, by reason of the relation, it is prima facie void.

The law will presume from the mere existence of the relation that the gift was obtained by undue influence or improper means and the burden of proof rests upon the donee to show that it was the free and voluntary act of the donor. Every confidential relation implies a condition of superiority by one of the parties over the other and, if one in a superior position obtains a benefit, such as a gift, equity will raise a presumption against its validity and cast upon the donee the burden of proving affirmatively good faith, full knowledge and independent action on the part of the donor. (*Michael v. Marshall,* 201 Ill. 70, 76; *Dowie v. Driscoll,* 203 Ill. 480, 490; *Gilmore v. Lee,* 237 Ill. 402, 411.)

In *Gilmore v. Lee, supra,* the court held: "It is not necessary, however, that such a conclusion should rest upon the facts proved. It is a universal rule, founded upon public policy, that where a confidential relation exists, if a gift is made to the person in whom the confidence is reposed by reason of the relation it is prima facie void. The law will presume, from the mere existence of the relation, that the gift was obtained by undue influence or improper means, and the burden of proof rests upon the donee to show that it was the free and voluntary act of the donor. Every confidential relation implies a condition of superiority by one of the parties over the other, and if the superior obtains a benefit, such as a gift, equity raises a presumption against its validity and casts upon the donee the burden of proving affirmatively good faith, full knowledge and independent action on the part of the donor. (*Thomas v. Whitney,* 186 Ill. 225; *Sayles v. Christie,* 187 id. 420; *Michael v. Marshall,* 201 id. 70; *Dowie v. Driscoll, supra;* 2 Pomeroy's Eq. Jur. sec. 956; 14 Am. & Eng. Ency. of Law,—2d ed.—194, 1011; 29 id. 119.)" This principle reaches every case and grants relief where influence is acquired and abused, or where confidence is reposed and betrayed. It is especially active

and searching in dealing with gifts, but is applied, when necessary, to conveyances, contracts, executory and executed, and wills. (*Dowie v. Driscoll, supra; Purvines v. Harrison,* 151 Ill. 219; *White v. Ross,* 160 Ill. 56.)

We have read the testimony and upon a full consideration of it we cannot escape the conclusion that it fully warrants the finding made by the chancellor that at the time appellee executed the release he did not have competent and independent advice and the transaction was not fair or just; that in consequence thereof appellee is entitled to have said release vacated and canceled.

Before the bill of complaint in this cause was presented, appellee presented a bill of complaint as administrator of the estate of Sadie Fry, deceased, praying for an accounting and seeking to subject the same assets to the control of the court of probate in the estate of Sadie Fry, deceased. This bill was dismissed. It is now contended by appellants that the decree of dismissal of the former bill was *res adjudicata* of the matters set out in the present bill of complaint. We cannot agree with this contention. The assets involved in this trust never became a part of the estate of Sadie Fry, deceased, but passed directly under the trust agreement. Before the doctrine of *res adjudicata* can be invoked, it must appear that the adjudication relied upon was between the same parties, suing or defending in the same capacity, upon issues that are identical, and the relief sought must be identical. (*Cramer v. Wilson,* 202 Ill. 83, 92; *City of Chicago v. Partridge,* 248 Ill. 442, 446.)

Some question is raised in the case as to the following clause in the trust agreement: "Provided, however, that in the event the said H. C. Pence shall deem it for the best interest of the said trust fund he shall have full power and discretion to make such payments

or advances from said principal funds but only upon the written request of the said Sadie Pence Warren." It is sufficient answer to this contention that neither party to the trust agreement ever sought to transfer any part of the principal of the estate to the donor, or that it would have been possible or proper, except in case of an emergency, in which both parties should concur. Preceding said clause and as a part of it there is a clause as to the said trustee paying income, "if such funds be available, and in the opinion of said H. C. Pence such payments are necessary or desirable; but the title to said income shall be in the name of H. C. Pence, trustee, until actually transferred and paid over to the said Sadie Pence Warren and the receipt from the said Sadie Pence Warren of such funds as shall be paid to her, shall be an acquittance to the said H. C. Pence for the moneys so paid over to her," showing plainly that it was the intention of both parties to the trust that neither said trust fund nor the income thereof in the hands of said trustee, should be subject to assignment, sale, transfer, levy of execution or legal lien, by reason of any assignment, debt or obligation of the said Sadie Pence Warren.

Finding no error in the record, the decree of the circuit court of Christian county is affirmed.

*Affirmed.*