Mary Morrison, Trustee, Appellee, v. Frank Nugent and Margaret Nugent, Appellants. John Edward Mersch, Executor of the Last Will and Testament of Catherine Mersch, Deceased, Appellant.

Gen. No. 41,665.

Burke, P. J., dissenting.

Heard in the third division of this court for the first district at the April term, 1941. Opinion filed June 25, 1941. Rehearing denied October 3, 1941.

Glenn, Real & Browning, of Chicago, for appellants; J. Roy Browning and Richard Rex Parkin, both of Chicago, of counsel. Howard B. Kerr and Eugene F. Jewett, both of Chicago, for appellees.

Mr. Justice Hebel delivered the opinion of the court.

This is an appeal by the defendants and intervenor defendant from a judgment entered by the court in favor of plaintiff as trustee and against the defendants, Frank Nugent and Margaret Nugent, in the sum of $4,749.46, the court finding that the intervenor defendant, John Edward Mersch, as executor of the last will and testament of Catherine Mersch, deceased, had no right, title or interest in and to the indebtedness sued on—the subject matter of this suit.

This action at law was commenced by plaintiff, Mary Morrison, trustee under Trust No. 101, as assignee, on a non-negotiable promissory note payable to the order of "Catherine Mersch, or her estate only," for $4,444 against Frank Nugent and Margaret Nugent, defendants and makers of the note. John Edward Mersch, executor of the last will and testament of Catherine Mersch, was allowed to intervene and file an answer alleging that the note sued on was an asset of the estate of Catherine Mersch, deceased; that said note had not at any time been assigned, transferred or delivered to the plaintiff, but that she had wrongfully come into the possession of the same and refused to deliver the same to him as ex-

ecutor, and praying that the court find title to the note and the rights of property therein to be in him as executor of the last will and testament of Catherine Mersch, deceased.

The note sued on and the subject matter of the trial of the rights of property between plaintiff, as trustee under Trust No. 101, and the intervenor-defendant, as executor of the last will and testament of Catherine Mersch, deceased, is unindorsed and is in the following words and figures:

"$4444.00/00                          October 4, 1937

"On demand I promise to pay to the order of Catherine Mersch or her estate—only—Four Thousand Four Hundred Forty Four no/100 Dollars.

"Payable at 6½% interest.

"Value received—not negotiable.

No. . . . . . . Due-Demand

Frank Nugent
Margaret Nugent"

The case was tried without a jury, and the court found that the plaintiff was trustee under the terms of an agreement dated May 15, 1935, entered into between Catherine Mersch and plaintiff, under which trust agreement one principal promissory note, due on demand, in the sum of $5,000, executed by the defendant, Frank Nugent, was delivered to plaintiff, and that the delivery of said note and trust agreement by Catherine Mersch constituted an irrevocable trust and title to the note for $5,000 vested in the plaintiff as trustee; that payments on said note were subsequently made, and that the note sued on was executed on October 4, 1937, upon which there was a balance due in principal and interest of $4,749.46; that the indebtedness of the defendants was the subject matter of the suit, and that the intervenor-defendant John Edward Mersch, as executor of the last will and testament of Catherine Mersch, deceased, had no right, title

or interest in and to said indebtedness. The court entered judgment on these findings in favor of plaintiff and against defendants Frank Nugent and Margaret Nugent in the sum of $4,749.46 damages, together with costs, and, as we have indicated, from that judgment the defendants and intervenor-defendant appeal.

The complaint at law declares upon a note made and delivered to Catherine Mersch on October 4, 1937, and alleged to have been assigned and delivered to the plaintiff as trustee under Trust No. 101. The defendants' motion to strike the complaint, which was overruled by the court, sets up as grounds for the motion that the trust agreement attached to and made a part of the complaint was dated May 15, 1935, and described a note of the defendant, Frank Nugent, payable to the order of Catherine Mersch, for the sum of $5,000 and that the note sued on was dated October 4, 1937, and was executed by the defendants, Frank Nugent and Margaret Nugent, in the principal amount of $4,444, and was payable to the order of Catherine Mersch, or her estate *only*, and by express terms and provisions was made non-negotiable; that it appears upon the face of the complaint that the note sued upon is not the note described in and purported to be transferred to the plaintiff by the said trust agreement; and that it appears upon the face of the complaint that the plaintiff, as trustee, has no right, title or interest in or to the note sued upon.

The intervening petition and answer of John Edward Mersch, executor of the last will and testament of Catherine Mersch, deceased, alleges that Catherine Mersch was the owner of the note sued on at the date of her death; that she had not at any time assigned, transferred or delivered said note to the plaintiff, and that the plaintiff had wrongfully and without right, title or interest, come into possession of the said note and refused to deliver the same to him as executor.

Defendants, by their answer, after the motion to strike was overruled, denied that the plaintiff was or ever had been the owner and holder, as trustee under Trust No. 101, of the note sued on, and denied that the note was ever assigned, negotiated, transferred or delivered to the plaintiff under the terms and provisions of said trust agreement, and alleged that the note was the sole and absolute property of Catherine Mersch, from the date of its execution until the date of her death, and that the plaintiff obtained the same after the death of Catherine Mersch, without right, title or authority. This the plaintiff denied, and upon these issues the case was tried.

It appears from the record in this case that the parties entered into an oral stipulation, which appears in the record as follows; "At the suggestion of Judge Epstein, before whom said cause was called for trial, it was stipulated between the parties that the Executor of the Last Will and Testament of Catherine Mersch, deceased, had filed an affidavit in the Probate Court of Cook County for citation to compel the plaintiff, Mary Morrison, to turn over to the estate the note sued on, as it was claimed by the Executor that the note was an asset of the estate, and that trial in the Probate Court was set for the 29th day of November, 1940; that there was no dispute as to the liability on the note, but the only question between the parties was as to the amount due and the ownership of the property, and that at the suggestion of Judge Epstein, the trial of the rights to the property, or ownership of the note, could be tried in this cause, and that the Executor would file a petition or answer to the complaint in the nature of an interpleader, which could be filed at some later date *nunc pro tunc* as of this date, and that the parties would try in this cause not only the question of the liability on the note, the amount due on the note, but also the rights of property or title to the note." The executor did file a petition in the nature of an

interpleader and the case was tried—upon this stipulation as we have recited it—on the questions which the parties agreed were the proper questions for the court to determine. Upon the trial, the evidence having been presented by the respective parties, the judgment appealed from was entered.

The plaintiff's theory is that the trial court properly entered its judgment in favor of plaintiff and against defendants, there being no evidence that title to the note in question was not vested in plaintiff; that an irrevocable trust was created by the execution of the trust agreement by Catherine Mersch and the delivery of said instrument, together with the $5,000 note, mentioned therein to the plaintiff; that the $5,000 note constituted the *res* of the trust; that payments of principal were made on said $5,000 note reducing it to the sum of $4,444, at which time the note for $4,444 was executed by the defendants and delivered in exchange for the $5,000 note; that it was a renewal note and a continuation of the indebtedness, being the balance due on the $5,000 note; that the $4,444 note then became and was the *res* of the trust, title to it being vested in plaintiff as trustee; and that she is, therefore, entitled to judgment against defendants—the intervening petitioner having no rights as the executor of the will of Catherine Mersch in the subject matter. The theory of the defendants which was advanced is that the note sued on was not in existence at the time the trust agreement was made, and that when it did come into existence it was delivered to Catherine Mersch, payments of interest and principal thereon made to her during her lifetime, and that she never delivered or intended the said note to become a part of said trust, and that said note became a part of her estate at her death and should be ordered delivered to her executor. The defendants contend that the court's theory—as evidenced by his findings and judgment—was that the indebtedness of Frank Nugent

to Catherine Mersch, on the date the trust agreement was entered into, less payments thereon made to Catherine Mersch during her lifetime, was the corpus of an irrevocable trust to plaintiff, and that the balance of said indebtedness, and not the note sued on was the subject matter of the suit and the property of the plaintiff as trustee of an irrevocable trust.

From the testimony of plaintiff, Mary Morrison, it appears that she resides in Evanston, Illinois, and is the daughter of Catherine Mersch, deceased. She testified that she had seen plaintiff's exhibit 1 (trust agreement) and that it bears the signatures of her mother, Catherine Mersch, and herself; that she received this exhibit from her mother—after the lawyer gave it to her mother, after the date it bears; that at the time her mother gave her the trust agreement she also gave plaintiff a $5,000 note; that the trust agreement was signed on May 10, 1935, and that plaintiff's mother gave it to her the next day, in the presence of plaintiff's husband, and that she placed the agreement and note in her (plaintiff's) safety deposit box in the Evanston Trust and Savings Bank the same day; that the $5,000 note she received is the note mentioned in the trust agreement, and that after that date plaintiff gave the $5,000 note to her mother and her oldest brother to take to Mr. Nugent and that plaintiff did not receive it back; and that after that time plaintiff received from her mother as a part of the trust agreement plaintiff's exhibit 2 (the note for $4,444). The plaintiff offered this exhibit—the trust agreement—in evidence, which was objected to by the defendants. The court admitted the exhibit in evidence subject to defendant's objection. This trust agreement is in words and figures as follows:

"TRUST AGREEMENT No. 101.

"This Trust Agreement, known as Trust No. 101, by and between Catherine Mersch, a widow, of the City

of Evanston, County of Cook and State of Illinois, and Mary Morrison, of the City of Evanston, County of Cook and State of Illinois, WITNESSETH

"1. I hereby create Mary Morrison Trustee of the trust herein created.

"2. I have transferred and hereby transfer to said Trustee the note of Frank Nugent, payable to my order, for the sum of Five Thousand Dollars ($5,000.00), in trust for the uses and purposes hereinafter set forth.

"3. I reserve the right and power to transfer other property hereinafter to said trustee, and such additional property shall be subject to the terms of this trust.

"4. Said trustee shall devote the principal and income of said trust estate as follows:

"(a) She shall pay therefrom my funeral expenses, expenses of my last illness and any other just debts owing by me at the time of my death.

"(b) She shall expend such sum as she shall in her discretion determine for the offering of masses for the repose of my soul.

"(c) She shall expend such portion of the income or if she shall in her discretion determine it to be necessary, of the principal of said trust estate for the care, maintenance and support of my sister, Margaret Jordan, and for the funeral expenses of my said sister, and the expenses of her last illness.

"(d) Upon the death of my said sister, Margaret Jordan, said trustee shall distribute the balance of said estate then remaining in equal shares as follows:

"1/5 to Henry Mersch, and in case he is not then living, to his children.

"1/5 to Edward Mersch, and in case he is not then living, to his children.

"1/5 to Mary Morrison, and in case she is not then living, to her children.

"1/5 to Margaret Nugent, and in case she is not

then living, to her children. In case she shall not leave any children who shall then be surviving, her one-fifth share shall be added to the shares of Henry Mersch, Edward Mersch and Mary Morrison.

"1/5 to Mary Morrison, as Trustee under Trust Agreement No. 100 dated May 8, 1935.

"5. All the terms and provisions of this trust and the powers, duties and discretion of the trustee shall apply to any other property, real or personal, to which said trustee may acquire title and ownership as such Trustee.

"6. In case of the death, refusal or inability to act of said trustee, Mary Morrison, I appoint my son, Edward Mersch, as successor trustee, and said successor trustee shall be vested with the same title to said trust estate in whatever form it may be as is hereby and by said deed of conveyance vested in said Mary Morrison. In case of the death of Edward Mersch before the death of said trustee, Mary Morrison, then the successor trustee shall be such person or trust company as said Mary Morrison shall by instrument in writing, executed during her lifetime, or by her Last Will and Testament shall designate and appoint as her successor in trust. All powers, duties and discretion created or imposed upon said trustee shall inure to and be binding upon said successor in trust.

"In witness whereof I have hereunto set my hand and seal this 15th day of May, A. D. 1935.

CATHERINE MERSCH (Seal)

"I hereby accept the trust granted to me in the above instrument, and accept the conveyance cited in said trust agreement.

"Witness my hand and seal this 15th day of May, A. D. 1935.

MARY MORRISON (Seal)"

The plaintiff further testified that plaintiff's exhibit 2 (promissory note for $4,444 payable to

"Catherine Mersch or her estate—only—") bears the signatures of Frank Nugent and Margaret Nugent; that plaintiff received the note from her mother on October 5, 1937; that plaintiff is a sister to Mrs. Nugent; that on the same date plaintiff received the exhibit, she put it in her box in the safety deposit vault in the bank, and that she did not take it out of the box until July or August after her mother passed away, and then she took it out and gave it to her attorney, Joseph Tyrrell; that she received it back from him and put it back in the box and did not take it out again till she gave it to her attorney; that the exhibit remained in her possession from October 5, 1937, until after the death of her mother, who died on June 1, 1939; that after her mother turned over exhibit 2 to plaintiff, she (plaintiff) had a conversation with her mother in regard to it; and that plaintiff had not received payment for the note and that she never did receive any interest on the note. Plaintiff's exhibit 2 (promissory note for $4,444) was offered in evidence and objected to by counsel for defendants, and after the court had heard the suggestions offered and reply of counsel for the plaintiff admitted the note in evidence, which is the note in question heretofore incorporated in this opinion in words and figures as appears from the face of the instrument.

It further appears from the cross-examination of the plaintiff that the trust agreement was prepared by attorneys Joseph Tyrrell and Robert James, that it was upon the request of her mother that plaintiff phoned these gentlemen to come to the house, that her mother wanted to see them; that she was present when they saw her mother prior to the time the trust agreement was entered into, and that none of her brothers or sisters was present at that time. It further appears from this cross-examination that the day after the trust agreement was signed the note for $5,000 and the trust agreement were given to plaintiff by her mother; that the note was never out of plaintiff's possession

until she gave it to her mother and brother on October 4, 1937; and that during all of the time plaintiff did not collect any interest on the note nor any of the principal; that she did not tell Mr. Nugent or Mrs. Nugent, the payors of the note, that she had it in her possession, and did not ask them to pay any interest on the note. Plaintiff further stated in her cross-examination that she was not the entire owner of the note and that her mother, according to the trust agreement was to receive the benefit of this note and also of her property, which did not entitle her (plaintiff) to have control of her mother's money, rents, or note. The plaintiff further stated that she made no objection to somebody else collecting the interest. It further appears from this examination that plaintiff gave the $5,000 note to her brother on October 4, 1937, and received the note for $4,444 on October 5, 1937, from her mother, which note plaintiff put in her box in the bank. This note remained in plaintiff's box until she took it out and gave it to her lawyer to institute the suit now before us.

The husband of the plaintiff stated that he first saw the trust agreement in his wife's mother's home the day after it was made out; that his wife and mother-in-law were present; and that his wife then took it and put it in the bank in the safety deposit box on the morning of May 16, 1936, he accompanying her to the bank. This box was in his wife's and his name. He also testified that he saw a note for $5,000 handed to his wife at the time she received the trust agreement, and that the note was placed in the safety deposit box at the same time as the trust agreement. He further stated that he saw plaintiff's exhibit 2 (the note for $4,444) handed to his wife on October 5, 1937, his wife and her mother being present, and that the note was taken right over and put in the safety deposit box on October 5, 1937.

Upon plaintiff's having rested, defendants renewed their motion and objection to the introduction of the trust agreement and the note and were heard upon the question. The court took the motion under advisement.

It was stipulated that the clerk of the probate court identifies the file of the probate court of Cook county in the matter of the estate of Catherine Mersch, deceased. There was offered and received in evidence the (1) petition for admission of will of Catherine Mersch, deceased, to probate (2) oath of executor (3) executor's bond in the penal sum of $9,000 (4) affidavit of executor that Mary Morrison has in her possession a note payable to the deceased belonging to the estate of Catherine Mersch, deceased, and praying that citation issue, and (5) citation to Mary Morrison to appear before the probate court on November 29, 1940.

The defendants then offered their evidence and Frank Nugent, one of the defendants, was called as a witness and testified that plaintiff's exhibit 2 being a note for $4,444, dated October 4, 1937, was in his handwriting; that the note was made in the presence of Catherine Mersch, the payee, John Edward Mersch, the witness' wife, and the witness; that the note is dated October 4, 1937, but was delivered to Catherine Mersch on July 21, 1937, in the presence of John Edward Mersch, the witness' wife, and the witness; that this note was given as a renewal of an old note at the time the new note was made on July 21, 1937, and given to Mrs. Mersch and she gave the old note to him. This witness further stated that the old note (plaintiff's exhibit 1) is in the exact condition it was when he received it from Mrs. Mersch, and that the words, "July 21, 1937. Exchanged for new note," are written across the face of the old note, and were written on that date by John Edward Mersch—oldest son of Mrs. Mersch. This witness further testified

that the old note was for $5,000 and the new note was for $4,444; that the difference in the principal amounts was paid on July 21, 1937—the date of exchange of the notes—as Mrs. Mersch needed the money to pay her taxes; that he paid the difference with his personal check, payable to the order of Catherine Mersch for $250; that he was acquainted with Catherine Mersch's signature, and the endorsement on the back of the check was her signature. There appear in evidence other checks which were delivered to Catherine Mersch in payment of interest. Frank Nugent further testified that the first time he learned Mary Morrison had the note in her possession was after the death of Catherine Mersch, when Mary Morrison called him on the telephone. On cross-examination it appears from this witness that the principal payment of $250, made on July 21, 1937, brought the amount owed to Catherine Mersch down to $4,444, and "that was the reason the new note was made out for that amount and dated October 4, 1937, and that included the interest to that time."

The defendant, John Edward Mersch, testified that after his father's death, he helped his mother transact her business and had occasion to know and see a note that was made payable to his father and later made payable to his mother, signed by Frank Nugent, for $5,000; that he assisted his mother in connection with this note; that he assisted her in helping her to pay her taxes; that he had occasion to go with his mother to the bank from time to time and saw the $5,000 note in her box in the bank; that he remembered the occasion when the old note was transferred for the new note—the subject of controversy in this law suit.

The defendants suggest that the findings and judgment of the trial court are not supported by and are at variance with the pleadings, and proofs and the theory of the action upon which the pleadings were framed and the case tried, and that such judgment is

erroneous and should be reversed. They contend that this is an action upon a specialty; that the complaint declares upon a non-negotiable promissory note by an assignee; and that at common law, an assignee of a non-negotiable chose in action could not sue in his own name, and that it is only by virtue of section 22 of our Practice Act that an assignee may sue thereon, the statute providing that in his pleading under oath the assignee must allege that he is the actual bona fide owner thereof and set forth how and when he acquired the title. The complaint did allege that the plaintiff acquired the title from Catherine Mersch by assignment and transfer for value on October 4, 1937. Plaintiff's answer to defendants' contention is that an examination of the complaint as amended, the proofs, and the judgment entered in this case show that there is no variance as claimed; that this is a trustee's suit upon a promissory note dated October 4, 1937, for $4,444 executed by the defendants, Frank and Margaret Nugent, and due on demand. It is pointed out that the trust agreement states that Catherine Mersch transferred to plaintiff as trustee a note of Frank Nugent for the sum of $5,000 in trust for certain purposes, and that said agreement reserves the right and power to transfer other property to said trustee, and states that such additional property shall be subject to the terms of said trust; that after the execution and delivery of the $5,000 note and trust agreement in May, 1935, to plaintiff as trustee, it was exchanged for the $4,444 note, which was delivered to plaintiff in October, 1937, the defendants having made payments of principal on said $5,000 note reducing it to $4,444, and that the $4,444 note then became the *res* of the trust.

The plaintiff also contends that the court did not err in overruling the defendants' motion to strike the complaint as amended, for the reason that the trust agreement which was a part of the complaint, re-

ferred to the $5,000 note, and also provided for the transfer of other property to the trustee, and the complaint alleged that the $4,444 note was negotiated, assigned and delivered to the plaintiff by Catherine Mersch for value, and that plaintiff is the actual bona fide owner thereof and acquired title by assignment and transfer on October 4, 1937. Although the note was not endorsed, the allegation in the complaint was sufficient, as the statute provides that title to an instrument may be transferred by delivery without endorsement. (Ill. Rev. Stat. 1939, ch. 98, sec. 69 [Jones Ill. Stats. Ann. 89.069]). This section is in words as follows:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transferrer vests in the transferee such title as the transferee [transferer] had therein, and the transferee, acquires, in addition, the right to enforce the instrument against one who signed for the accommodation of the transferer and the right to have the endorsement of the transferer if omitted by accident or mistake. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

The question that arises upon this subject is whether the transfer was made for value. It appears from the facts that plaintiff had possession of the $5,000 note, together with the trust agreement, and that, at the time when negotiations were being made for the purpose of adjusting the amount due from the defendants, the plaintiff turned over the possession of the $5,000 note to her mother, Catherine Mersch, now deceased, and her brother, John Edward Mersch. The defendants then executed the $4,444 note, which was delivered to Mrs. Mersch and the $5,000 note was surrendered with the words "July 21, 1937. Exchanged for new note" written across its face. Mrs. Mersch

then delivered the new note to plaintiff and plaintiff placed the note in the bank, together with the trust agreement, where it remained until suit was brought. This delivery of the $5,000 note and the memorandum that was written across its face shows a sufficient consideration for the execution and delivery to plaintiff of the $4,444 note. The $4,444 note became an asset of the trust estate. The evidence tends to show that the note was delivered to plaintiff with the intent to transfer the title. It appears from the facts that after delivery of the $4,444 note to the plaintiff, it being a renewal of the old note and a continuation of it, it became and was the *res* of the trust. We quite agree with the plaintiff that there is nothing in the evidence tending to show that the parties intended to satisfy the debt, but on the contrary it appears tha the new note was given as an evidence of the continuation of the debt. The plaintiff cites upon this question the case of *Belleville Sav. Bank v. Bornman,* 124 Ill. 200, where the court said:

". . . the decided weight of authority is, regardless of what the legal presumption arising from the mere fact of renewal is held to be, that, it being the proper subject matter of contract, the intention with which the new note is accepted will control as to whether the original note or draft is paid and discharged by the acceptance of another in renewal of it, or not, and that this may be shown by proof of an express agreement of the parties as to the effect of the renewal upon the indebtedness evidenced by the former note or bill, or by proof of the attendant circumstances, from which the intention of the parties can be inferred." In *Jansen v. Grimshaw,* 125 Ill. 468, an action of assumpsit was brought to recover the amount of a promissory note dated February 1, 1881, for the sum of $2,000. When the note matured two years later, the interest was paid and a new note executed for the same amount. When the new note was received the old one was sur-

rendered. The declaration also contained a count on the new note and the common counts. One of the defendants interposed the defense that the plaintiff accepted and received the note of February 1, 1883, in full satisfaction of the note dated February 1, 1881. A judgment was entered in favor of plaintiff for the principal sum of $2,000 plus interest. The court thereupon this subject said:

"It is also contended that the court erred in admitting in evidence the note of February 1, 1881, which had been surrendered when the new note was given in renewal. The giving of one promissory note in lieu of another does not necessarily operate as a payment. In order to have that effect it must be so understood and intended by the parties." See also the case of *Keller v. North American Life Ins. Co.*, 301 Ill. 198, on the question here involved. It is well to have in mind the intention of the parties relative to the exchange of notes. An examination of the evidence discloses that Frank Nugent, one of the defendants, testified that the $4,444 note was in his handwriting, and "that note was made in the presence of Catherine Mersch, the payee, John Edward Mersch, my wife and myself. The note is dated October 4, 1937, but was delivered to Catherine Mersch on the 21st day of July, 1937, . . . This note was given as a renewal of an old note at the time the new note was made on July 21, 1937, and given to Mrs. Mersch. She had the old note and gave it to me. . . . It (the old note) is in the exact condition it was when I received it from Mrs. Mersch. The words, 'July 21, 1937. Exchanged for new note,' are written across the face of the old note, and was written by John Edward Mersch on that date. . . . On the same date and at the same time, I delivered the new note, . . . plaintiff's Exhibit 2, to Catherine Mersch, and she gave to me the old note." John Edward Mersch, a witness for defendants and executor of the will of Catherine Mersch, testified:

"I remember the occasion when the old note was transferred for a new note. That was in Frank Nugent's house. . . . The writing on the note, '7/21/37, Exchanged for a new note,' is in my handwriting. The writing was put on the note the same time the new note was executed. I saw the new note made out. It is dated October 4, 1937, but was actually made on July 21st, 1937, and was delivered to my mother, Catherine Mersch, and I saw her have it in her possession at that time. I expected to see the note afterwards, but I did not." The note on its face bears the suggestion that it was exchanged for a new note, and this is supported by the evidence.

The plaintiff contends that a trust properly created by an instrument in writing reserving no power of revocation, and delivery of the property to the trustee, for a definite purpose, cannot be defeated by the subsequent acts of the grantor and trustee. The trust agreement provides that after the payment of debts, expenses of last illness, funeral expense, etc., the principal and income of the trust be used for the care, maintenance, and support of Margaret Jordan, sister of the donor; that upon the death of said Margaret Jordan the trustee distribute the balance in equal shares to her five children, one child's share being represented by plaintiff as trustee under another trust agreement. It is contended that since the purposes of this trust were not, and could not be carried into completion during the life of the donor, the trust could not be abrogated or changed by the donor and the trustee. As an authority for this principal the case of *Williams v. Evans,* 154 Ill. 98, in which case the facts are analogous to the instant case, the court said upon the question involved: " . . . The fact that the property, after the execution of the trust instrument, was found in the possession of Mary Williams, is relied upon by the appellants to establish the fact that she never intended to deliver the papers or property ab-

solutely. Upon the execution and delivery of the trust instrument and the property therein described, by Mary Williams to the trustees, the rights of the parties became fixed, and the trustees, after accepting the trust, had no authority to deliver the possession of any of the property named in the trust instrument to Mrs. Williams, and the fact that they disregarded their duty in this regard did not affect the validity of the transaction as originally made. If there was a complete delivery of the trust instrument, and the property therein described, to the trustees, as we think there was, the subsequent acts and declarations of Mrs. Williams and the trustees cannot defeat the trust.'' This applies with additional force upon the facts as they appear in this case. The defendants here claim that the subsequent acts of Catherine Mersch and the plaintiff are evidence of the fact that she never intended to deliver the property absolutely, but the decision in the *Williams v. Evans* case *supra* would seem to dispose of this contention. The court in that case further said:

''There is nothing in the transaction which tends to show that it was designed to take effect as a testamentary disposition of property, but, on the other hand, the property was absolutely disposed of . . . so far as her personal property, notes, bonds and mortgages were concerned, she was at liberty to make such absolute transfer of that property as she might think for the best. This she has done, and we think the judgment of the circuit court sustaining the transaction was correct, and it will be affirmed.'' In the case of *Hubbard v. Budemeier,* 328 Ill. 76, an attempt was made to terminate a trust before the purpose of the trust was carried out. The court in that case cites with approval the *Williams v. Evans* case *supra,* and held that the trust could not be terminated by an agreement of the beneficiaries, except in cases where the object of the trust has been practically accomplished and all the interests created by it have become

vested. This rule was also followed in *Fry v. Pence,* 261 Ill. App. 218.

Another contention of defendants is that a condition restraining negotiation of a note to a particular person is a valid condition and makes the note unenforcible in the hands of the persons to whom it is negotiated in violation of the restrictive condition. It is called to our attention that the words "Catherine Mersch—or her estate only" were written into the note for the express purpose of keeping the plaintiff from securing the note, and urged that such a restraint on negotiation is a valid condition and made the note unenforcible in the hands of the plaintiff, in whose possession it came in violation of the agreement between Catherine Mersch and the defendant Frank Nugent that it should not be assigned or negotiated to her. As we have already said in passing upon this question, the plaintiff received the note from her mother in her mother's lifetime, and nothing was said at that time by the mother to the daughter to the effect suggested by the defendants. While it is true that the note bears the words "not negotiable" on its face, and the well-settled law of Illinois makes the note a non-negotiable instrument which cannot be transferred by indorsement to make the transferee a bona fide holder in due course, still under section 22 of our Practice Act (Ill. Rev. Stat. 1939, ch. 110, sec. 146 [Jones Ill. Stats. Ann. 104.022]) an assignee of a non-negotiable chose in action may sue thereon provided the assignee in his pleading under oath alleges that he is the actual *bona fide* owner thereof and sets forth how and when he acquired the title. The amended complaint in the instant case was sworn to and alleged that the plaintiff acquired title to the note by assignment and delivery from Catherine Mersch on October 4, 1937.

There is a question that must be considered concerning the admissibility of certain testimony of defendants relating to conversations with the decedent

in her lifetime. The trial court excluded evidence offered by the defendants concerning statements of the deceased at the time the note was made out and delivered by the defendants to the deceased. The defendant Frank Nugent testified:

"Plaintiff's Exhibit 2, the note sued on, which was given to Catherine Mersch in July, 1937, is in my handwriting, and is payable to the order of 'Catherine Mersch or her Estate only.' Those words were put on the note at the time it was made out by agreement between Catherine Mersch and myself. The words 'Catherine Mersch or her Estate only,' the word 'only' being underlined, were put on there for the express purpose of keeping Mary Morrison from securing the note, by agreement with Catherine Mersch. Also there was added the words 'not negotiable' for the same reason, and there was some conversation held between Catherine Mersch and myself, Edward Mersch being present at the time, and that was the subject of the conversation, to keep Mary Morrison from securing this note." On motion of plaintiff to strike this evidence the court ruled that "it may be stricken as to the negotiability of the note. That is not ambiguous. As to the word 'only' it may stand as to that." When we come to consider this offer that was made, we find that the words "pay to the order of Catherine Mersch or her estate—only—" were somewhat ambiguous in that the word "only" could refer to the note as being payable to Catherine Mersch or her estate *only* or to the amount of money—$4,444 *only*. As to the words "not negotiable," we believe the court was fully justified in striking these words. There was also a question as to the admissibility of evidence before the court upon the direct examination of John Edward Mersch, who was asked what took place when the note was made out and in answer stated, "Well, my mother was kind of feeble and she said 'I won't be here very long.'" Counsel for plain-

tiff interposed an objection to any statement of the deceased, and the objection was sustained, whereupon defendant then made the following offer of proof:

"I offer to prove by this witness that at the time this note was made, his mother was feeble and she wanted it made so that Mary Morrison could not get it in her possession." The court sustained a further objection to this offer of proof, and the question is now before this court. John Edward Mersch is executor of the last will and testament of Catherine Mersch, his mother, and the attention of this court is directed to section 2 of the Evidence Act (Ill. Rev. Stat., ch. 51, sec. 2 [Jones Ill. Stats. Ann. 107.068]), the defendants contending that this statute is not applicable where the adverse party is not suing as executor, heir, legatee or devisee of a deceased person. It would seem from the wording of this statute that where he is testifying in his own behalf—as we gather it from the testimony—that the evidence offered was not competent under this section. In the consideration of this question, this section applies and the court did not err in sustaining the plaintiff's objection (as trustee) to the admissibility of the evidence.

There is one question that we believe should be considered and that is the question as to whether the evidence offered by Frank and Margaret Nugent, his wife, should not properly be confined to establishing a defense to plaintiff's action. The defendants admit liability on the note in question and seek to avoid the purposes of plaintiff's action by defending on the ground that payment should be made to John Edward Mersch, as executor. It is the established rule that evidence offered by the defendant must be for the purpose of establishing a defense to the action. This evidence as offered does not tend to establish a defense to the collection of the note, nor to the action. In the case of *Popovsky v. Granite City Trust & Savings Bank,* 243 Ill. App. 526, the court said:

"It is no defense to an action on a promissory note that the plaintiff, although the holder of the legal title to the note, is merely the nominal party in interest, and that the beneficial interest in the note is in some-one other than the plaintiff. It is a matter of no conse-quence, so far as the defendant is concerned, who may be the equitable holder of the note unless the defendant has a defense as against the equitable owner thereof. (*Illinois Conference of Evangelical Ass'n of North America v. Plagge,* 177 Ill. 431; *Feulner v. Gillam,* 211 Ill. App. 348.) So in this case, appellee, being the nominal party in interest and the legal owner of the certificate in question, had the right to bring suit thereon in his own name and it was no defense that the estate of Ajiovsky was the equitable owner of the note, if such was the fact, unless appellant had some defense to the certificate which could be set up, if suit should be brought thereon by the executor of the payee. Such was not the contention of appellant. On the contrary, it contended that the certificate was the property of the estate of the payee. Appellant, how-ever, cannot avail itself of that as a defense, in this suit, but it will be fully protected by the judgment in this case in favor of appellee, the legal holder, in the event suit should be brought against it by the executor of the payee, even though that estate of the payee was the equitable owner of the certificate." In the instant case the makers of the note admit liability to pay the note in question. In passing upon the facts regard-ing ownership of the note, it appears from the evidence that the mother delivered the note to her daughter as a part of the *res* of the trust estate. The defendants could not avoid liability on the note for the reasons that they have contended. The evidence submitted does not establish a defense that would relieve these defendants from liability on the note, which they have admitted. From the facts we feel that the court was

fully justified in entering the judgment, and it will be affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, J., concurs.
BURKE, P. J., dissents.